[File No. 6227.]

W. B. DeNAULT, Respondent, v. ANNA V. HOERR et al. ANNA V. HOERR, as Administratrix of the Estate of Wm. G. Hoerr, Deceased, et al., Appellants.

(262 N. W. 361.)

84

Opinion filed August 13, 1935.   Rehearing denied September 17, 1935.

*Hyland & Foster,* for appellants.

*A. W. Aylmer,.* for respondent.

CHRISTIANSON, J.  This is an action to determine adverse claims to certain tracts of land in Stutsman county.  The complaint is in the statutory form.

The defendants in their answers allege that one William G. Hoerr was the owner of the premises in question; that said William G. Hoerr died; that at the time of his death he was the owner of said premises; that the answering defendants herein are heirs of the said William G. Hoerr, deceased, and as such heirs are the owners of said premises; that the defendant, "Anna V. Hoerr is the duly appointed, qualified and acting administratrix of the estate of William G. Hoerr, deceased;" "that neither the said William G. Hoerr in his lifetime or the said administratrix has ever conveyed said premises, and that said premises are still owned by the estate of the said William G. Hoerr and that said defendant is the owner of the said premises as administratrix of the estate of said William G. Hoerr."

The case was tried by the court without a jury upon the issues thus framed.

Plaintiff's title is predicated solely on certain tax deeds.  Upon the trial the plaintiff introduced the tax deeds in evidence in support of his claim of title and the defendants thereupon introduced evidence tending to show that one William G. Hoerr was the record owner of the premises; that he died and that the defendant, Anna V. Hoerr, is the administratrix of his estate and that said Anna V. Hoerr and the other answering defendants are the heirs of the said William G. Hoerr, deceased.

The sole question presented for determination on this appeal relates to the validity of the tax deeds.  The trial court found the tax deeds to be valid; that consequently the plaintiff is the owner in fee of the premises, and that all interest, right and title of William G.

Hoerr, the administratrix of his estate, and his heirs at law, were cut off by such deeds.

The defendants contend that the tax deeds are void for the following reasons:

1. That notice of the tax sale was not published as required by law.

2. That the name of the owner of the lands was not correctly given in the notice of tax sale.

3. That the land was not correctly described in the notice of tax sale.

4. That the notice of expiration of redemption was defective because the description of the land as contained in the notice of expiration of redemption was incorrect and misleading.

5. That the notice of expiration of redemption did not correctly set forth the amount required to redeem.

6. That the notice of expiration of redemption did not correctly state the time within which redemption must be made.

7. That the notice of expiration of redemption was not served upon the record owner of the land as prescribed by statute.

8. That notice of expiration of redemption was not served upon the occupants of the premises as required by law.

9. That no proper proof of the service of the notice of expiration of redemption was filed with the county auditor prior to the execution of the tax deeds.

The several contentions will be considered in the order stated.

(1) The tax sale in question here was held December 13, 1927. The notice of the sale was published in the issues of the official newspaper of November 24th and December 1st, 1927. So far as material here, the statute relating to the publication of notice of sale of land for delinquent taxes provides:

"The county auditor shall give notice of the delinquent real estate tax sale in the official newspaper of the county. Such delinquent tax sale notice shall be published weekly in such paper for two successive weeks, the first publication of such notice to be made at least fourteen days prior to the date of such sale. . . ." Section 2189, 1925 Supplement.

In our opinion the publication of the notice of tax sale in this case complied with the provisions of this statute. The statute requires: (1)

That the notice must be published weekly for two successive weeks; and (2) that the first publication of the notice be at least fourteen days prior to the date of the sale. The very language of the statute signifies that it was contemplated that only two publications of the notice should be made and that in no case should it be necessary to publish a notice of tax sale three times. In this case the sale was held December 13th. The official newspaper was published on Thursday of each week. In 1927 the dates of publication of the newspaper fell on November 24th, December 1st and December 8th. Publication in the December 1st and 8th issues of the newspaper would not have been a compliance with the statute because the first date of publication would not have been fourteen days before the date of the sale. In a majority of the counties of North Dakota there are no daily newspapers and the official newspapers are published weekly. The official newspapers in the various counties are published on different days of the week so the dates of the publication of the notices of tax sale in the several counties would not be made on the same dates but would vary according to the dates of publication of the official newspapers. Hence, as measured in days, the exact length of time of publication of the notice of tax sale before the date of sale would vary, and the statute does not purport to require the notice to be published any exact given number of days before the date of the sale. What it does require is: (1) That the notice be published weekly for *two* successive weeks, and (2) that the first publication shall be *at least* fourteen days prior to the date of the sale. In this case that is precisely what was done. The notice was published in two successive issues of the official newspaper. It was published weekly for two successive weeks and the first publication was at least fourteen days before the date of sale. When the date of the publication in the official newspaper is considered in relation to the date of the tax sale the notice was published in the only two issues of the newspaper in which it could have been published, and conform to the two requirements of the statute.

Appellants contend that the publication of the notice of tax sale was insufficient under the rule announced by this court in Finlayson v. Peterson, 5 N. D. 587, 67 N. W. 953, 33 L.R.A. 532, 57 Am. St. Rep. 584. That case involved the foreclosure of a mortgage by advertise-

ment. The statute there involved provided that the notice of sale must be published "for six successive weeks at least once in each week" and this court held that under such statute the first publication of the notice of sale must be made at least forty-two days, that is, at least six full weeks, before the date of the sale. In its opinion in that case this court said:

"We agree with counsel for plaintiff that the statute contains two elements. The first requires a publication 'for,' or 'during the continuance of,' six weeks, and nothing short of a publication for forty-two days will satisfy this branch of the act. The other requires at least six publications, and that one of them shall be in each of the six weeks between the first publication and the day of sale. If the statute had declared that the notice should be published once a week in each of six successive weeks, its meaning would have been different. But it does not so declare. Its explicit provision is that the notice shall be published for six successive weeks." (5 N. D. 588.)

It will be noted that the court, in its opinion in that case, in effect distinguished the statute there involved from the one involved in this case. The statute involved in Finlayson v. Peterson, supra, was afterwards amended so as to provide that a notice of mortgage foreclosure sale "must be given by publishing the same six times, once in each week for six successive weeks," and this court held that the statute as thus amended did not require publication for a period of forty-two days, but required only that the notice be published six times, once in each week, for six successive weeks before the sale, and that the sale was not invalidated because the first publication of the notice was not made at least forty-two days before the date of the sale. McDonald v. Nordyke Marmon Co. 9 N. D. 290, 83 N. W. 6.

(2) It is next contended that the notice of tax sale was defective because it did not contain the name of the owner of the lands to be sold as prescribed by § 2189, Comp. Laws 1913. The particular provision upon which appellants rely reads as follows: "Such notice of delinquent tax sale shall contain a list of the lands to be sold, the name of the owner as the records appear, and the amount of taxes and penalty due," etc.

It is the contention of appellants that the name of the owner of the

lands in question here was William G. Hoerr, that the name of the owner of the lands as given in the notice of tax sale for two of the tracts was W. G. Hoerr and for certain other tracts, Wm. G. Hoerr; and it is argued that the names as thus given in the notice of tax sale were different from the name of the owner. Respondent, however, asserts that the evidence in the case does not establish the facts to be as appellants contend. He calls attention to the fact that the notice of tax sale was not offered or introduced in evidence; that the only evidence offered by the appellants as to the contents of the notice of sale was the testimony of a deputy county auditor and that this testimony, according to the express declaration of the appellants' counsel upon the trial, was offered solely for the purpose of showing the dates of publication of the newspaper, and certain alleged defects in the descriptions of the lands as published in the tax list. The record discloses the facts to be as contended for by the respondent. Obviously the testimony of the deputy county auditor was not admissible for the purpose of proving what the notice of tax sale, as published, contained. The notice of sale as published in the newspaper was the best evidence. But even though the testimony were admissible and were accepted as proof that the notice of tax sale did recite the name of the owner of the several tracts of land to be as appellants contend, it would not disclose a condition such as appellants claim. The defendants offered in evidence the assessment list of Stutsman county for the year 1926. Such list gives the name of the owner of each of the several tracts of land involved in this action precisely the same as the deputy county auditor testified that the notice of sale as published recited.

Section 2196, Comp. Laws 1913, which applied to the tax sale in question here, provides: "No such sale of real estate for taxes shall be considered invalid on account of the same having been charged in any other name than that of the rightful owner."

As said, the evidence in this case discloses, as regards each tract of land, that the name of the owner as it appears on the assessment list is precisely the same as that which the deputy county auditor testified was given in the notice of tax sale as published. Hence, the notice of delinquent tax sale did contain "the name of the owner, as the records appear." The use of the owner's name in the tax proceedings under the

laws in question here was "essentially for the guidance of the taxing officers." Hertzler v. Freeman, 12 N. D. 187, 96 N. W. 294. When § 2189, supra, states that the notice of delinquent tax sale shall contain "the name of the owner, as the records appear" it has reference to the records in the tax proceeding. There was no intention that in preparing a notice of tax sale, the county auditor should make a search of the records in the register of deeds office to ascertain the name of the record owner in that office. All that was contemplated was that the notice of tax sale should contain the name of the owner as the tax records disclosed.

The only evidence as to the alleged defective descriptions in the notice of tax sale is the testimony of the deputy county auditor. The claim seems to be that the abbreviations used in the notice in describing the lands are insufficient because, for instance, the letters SW signifying southwest were not each followed by a period and appeared on a different line from the fraction one-fourth ($\frac{1}{4}$). Our statute expressly permits abbreviations of this type to be used in describing land in tax sales. 1925 Supp. §§ 2215–2225. It provides that "no description in which the foregoing abbreviations, symbols, initial letters, figures or characters can be definitely understood by the application of the foregoing definitions and rules where by such construction the description of real estate in any taxation proceedings can be made definite, shall be held as defective because such abbreviations are used instead of the words or fractions symbolized thereby. . . ."

In our opinion the testimony of the deputy county auditor was not admissible for the purpose of showing the contents of the notice of tax sale. The notice of tax sale as published was obviously the best evidence of what the notice contained; but as we read the testimony of the deputy county auditor the descriptions would not be defective if the lands were described as the deputy county auditor testified they were described; for any person of ordinary understanding and intelligence must have understood that the notice was intended to refer and did refer to the lands that subsequently were sold at the tax sale.

(3) It is next contended that the lands were not described with sufficient definiteness in the several notices of expiration of time for redemption. This contention is wholly devoid of merit. In preparing

.the notices of expiration of redemption the county auditor utilized a printed blank form customarily employed in the various counties for that purpose. In order that the particular objection raised by appellants may be visualized we quote from one of the notices of expiration of time for redemption. (The portion which we have italicized was printed; the remainder was typewritten.)

. *"Said land is described as follows:* The Northeast quarter (NE$\frac{1}{4}$) of section one (1) township one hundred forty-four (144) range sixty-nine (69) *Section 1, Township 144, Range 69."*

It is inconceivable that any person who had sufficient intelligence to read this statement could fail to understand what tract of land the notice intended to describe, or that he could possibly have been misled because in addition to the description of the land being written out in full with the typewriter, the blank spaces provided for inserting the number of section, township and range in the printed portion of the blank were also filled in.

(4) Appellants next contend that "the amount required to redeem is .not stated in the notice" of expiration of redemption. This contention is directly contrary to the specific statements in each of the notices. Thus, the notice of expiration of redemption for the SW$\frac{1}{4}$, section 29, township 139, range 68, contained the following:

"Amount sold for, $80.31.

Subsequent taxes paid by purchaser, $85.41.

Amount required to redeem at this date, $218.43.

Amount required to redeem at the expiration of this notice, $223.40."

Similar statements (with exception of amounts) were contained in each of the notices of expiration of redemption.

It is argued by the appellants that "there is no authority for the holder of the certificate of sale to include the subsequent taxes paid, . . . and the notice including such amount is a nullity as it does not give the correct amount to redeem." This contention is directly contrary to the provisions of § 2197, 1925 Supplement, which provides that if at a tax sale "any piece or parcel of land shall be sold to a purchaser the same may be redeemed at any time within three years from the date of sale by any person or corporation having an interest therein who shall pay into the treasury of the county for the credit of the person thereto en-

titled, the amount paid by the purchaser at the time of sale with a penalty of three per cent and interest thereon at the rate specified in such certificate of sale, together with all amounts of subsequent taxes, penalties and interest paid by the holder of such certificate of sale up to the date of redemption. . . ."

The amount of subsequent taxes, penalties and interest paid by the holder of the tax sale certificate is therefore clearly "part of the amount required to redeem such lands from sale" and was properly included in the notice of expiration of redemption.

(5) It is next contended that the notices of expiration of redemption were defective because they did not state when the time for redemption would expire. Each of the notices contained this statement: "The time for redemption from said sale will expire ninety days from the completed service of this notice.". This statement is in literal compliance with the statute. The statute provides that a person holding a tax certificate "shall, at least ninety days before the expiration of the time for the redemption of the lands therein described, present such certificate to the county auditor," and the county auditor is thereupon required to prepare a notice of expiration of redemption, which notice, among other things, is required to specify "the time when the redemption period will expire." But the statute further provides that "in case of failure on the part of the holder of any tax certificate to present the same to the auditor at the time hereinbefore provided, the same may be so presented at any time within three (3) years thereafter, and thereupon such notice shall be issued and served as hereinbefore provided, and the time for redemption of such lands shall expire ninety days after such notice," Section 2223, 1925 Supplement. The tax certificates in question here fell within the latter class. They were not presented to the county auditor "at least ninety days before the expiration of the time for the redemption of the lands therein described"; but they were presented within three years after the expiration of the three year period. In notices of expiration of redemption on certificates so presented, a statement of the time of the expiration of the period of redemption such as that contained in the notices in question here is a complete compliance with the provisions of the statute.

(6–8) The remaining objections are leveled at the service and proof

of service of the notices of expiration of redemption. It is contended:—
(1) that the notices were not served upon the owner as provided by law;
(2) that they were not served upon the person in possession of the land;
and (3) that no proof of the service of the notices of expiration of redemption was filed with the county auditor.

The statute provides that a tax deed such as those involved here "shall be conclusive evidence of the truth of all the facts therein recited and prima facie evidence of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed." Comp. Laws 1913, § 2206. The tax deeds in question here were regular and valid on their face and established prima facie that the statutory requirements as to service of notice of expiration of redemption had been fully complied with. Fisher v. Betts, 12 N. D. 197, 96 N. W. 132; Twedt v. Hanson, 58 N. D. 571, 226 N. W. 615; Baird v. Zahl, 58 N. D. 388, 226 N. W. 549.

The defendants therefore had the burden of overcoming the probative effect of the tax deeds and of showing that notice of expiration of redemption had not been given in the manner provided by law.

The statute provides that upon presentation of a tax certificate the county auditor "shall prepare, under his hand and official seal" a notice of expiration of redemption, "which notice the auditor shall cause to be delivered to the sheriff or his deputy who shall serve it personally upon the owner, if known to be a resident of the state, but which may, if the owner be a non-resident, be given by registered mail, addressed to such owner at the last known post office address, and by publication once in each week, for three consecutive weeks, in some newspaper printed and published in the county where such lands are situated, if there be one. . . . . And in case the property covered by such certificate is occupied then service of such notice shall, in addition to the foregoing provision, be made upon the person in possession thereof. Proof of notice herein provided for must be filed in the office of the county auditor prior to the maturing of such certificate, and no deed shall issue until such proof has been duly filed." 1925 Supp. § 2223.

The only evidence adduced by the defendants bearing upon the service, and proof of service, of the notices of expiration of redemption consisted of certain documents on file in the office of the county auditor.

These were identified by the deputy county auditor and as regards each tax deed consist of the following documents: (1) The notice of expiration of redemption and a return by the sheriff of the county endorsed on the back of each notice of expiration of time of redemption; (2) a postmaster's receipt for a registered letter; (3) a return receipt; and (4) affidavit of publication of notice of expiration of time for redemption. In the sheriff's return the sheriff certified and returned that the notice was delivered to him by the county auditor of the county for service and return on a certain designated date. The sheriff further certified: "I have made diligent search throughout the state of North Dakota for the within named Wm. G. Hoerr to serve the within notice upon him and that he cannot be found in said state and that there is no person in the possession of said land and that I then securely enclosed a true copy of said notice in an envelope and directed the same to Wm. G. Hoerr, at Mankato, Minnesota, that being the last known post office address of said person, and paid registered postage thereon and deposited the same in the postoffice at Jamestown, North Dakota."

There was attached to each of such notices of expiration of redemption and sheriff's return endorsed thereon a postmaster's receipt by the postmaster at Jamestown, North Dakota, for a registered letter; also a return receipt purported to be signed by the addressee of the letter acknowledging that he had received the same from the postmaster at Mankato, Minnesota. In short, there was introduced in evidence as part of the files of the county auditor a receipt which purported to be signed by the record owner of the land to whom the registered letter, containing such notice, had been addressed. According to the sheriff's return these letters were in each case addressed to "Wm. G. Hoerr at Mankato, Minnesota," and the return receipt, and signature attached thereto, at Mankato, Minnesota, was in each case as follows:

"Received from the Postmaster the Registered or Insured Article, the original number of which appears on the face of this Card

"W. G. Hoerr

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(Signature or name of addressee)."

There was also introduced in evidence as part of the records in the county auditor's office, an affidavit of publication relating to each of the

notices of expiration of redemption. Each affidavit of publication was in due form, and complied with the requirements of § 7913, Comp. Laws 1913 (relative to affidavits of publication) and showed that the notice had been published for three consecutive weeks in the Jamestown Daily Sun, a daily newspaper of general circulation, printed and published in Jamestown, North Dakota, in the county of Stutsman,—the county in which the lands in question were located. No proof was adduced that William G. Hoerr was a resident of the state of North Dakota. The evidence in this case discloses that his estate is being probated in another state and that the administration in North Dakota is ancillary. There is no claim and no proof that the registered letters containing the notices of expiration of redemption were delivered to any person other than the addressee, namely, Wm. G. Hoerr, the record owner of the lands described in the notices, or that the signatures appearing on the return receipts were not affixed by him.

The statute is silent as to the form of return to be made by the sheriff. It places upon the sheriff the duty of making service of notices of expiration of redemption delivered to him by the county auditor, and it says that if the owner is known to be a resident of the state the notice must be served upon him personally. It further says that if the owner be a non-resident, the notice may be served by registered mail addressed to him at his last known post office address. In this case the sheriff certified and returned that he had made search for William G. Hoerr throughout the state of North Dakota and that he could not be found; that his last known post office address was at Mankato, Minnesota, and that he (the sheriff) mailed a copy of the notice, by registered mail, addressed to him at that place. The sheriff's return is consistent with and indicative of the fact that William G. Hoerr was a non-resident of the state. But the proofs filed with the county auditor consisted not only of the sheriff's return but also of the return registry receipt which showed that the addressee Hoerr called for and received the letters, and receipted for the same, at Mankato, Minnesota. The sheriff is presumed to have performed his duty and the sheriff's return must be construed in light of this presumption. There is no claim and no proof that Hoerr was a resident of North Dakota and if he was a non-resident then the service by mailing was made in a strict compliance with the

provisions of the statute. In our opinion the proof filed with the county auditor was sufficient to establish prima facie that Hoerr was a non-resident of the state.

It is contended that the proof of service was defective because the sheriff did not make a return as to the publication of the notice in the newspaper. The statute does not so require. Obviously when the statute provides for publication of a notice it was contemplated that proof of publication should be made the same as in other cases where a notice is required to be published. Comp. Laws 1913, § 7913. The affidavit of publication in this case furnished such proof.

It is contended that the service of the notice of expiration of redemption is defective because no service was made on the person in possession of the land. The sheriff's return on each notice was to the effect that no person was in possession of the land. On some of the notices the sheriff entered an additional statement to the effect that a copy of the notice had been given to the tenant (naming him) but here again in each case that very statement was followed with a further specific statement that no one was living on the land. In our opinion the additional notations thus made did not destroy the verity and effect of the positive statement in the return that "there is no person in the possession of said land." And the defendants failed to adduce any evidence whatsoever showing or tending to show that there was any person in possession of or occupying any of the tracts of land involved.

We are all agreed that upon the record submitted on this appeal the trial court was correct in finding that as regards each tract of land notice of expiration of time for redemption was duly given and served upon Wm. G. Hoerr, the record owner of the lands in question in the manner provided by the statute. It follows from what has been said that the judgment appealed from is correct and must be affirmed. It is so ordered.

Burke, Ch. J., and Burr and Nuessle, JJ., concur.

Morris, J., did not participate.